# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

|                                                 |     |                              |
| ----------------------------------------------- | --- | ---------------------------- |
|                                                 | )   |                              |
| **MICHAEL R. DUNAWAY,**                         | )   |                              |
|                                                 | )   |                              |
| **Plaintiff,**                                  | )   |                              |
|                                                 | )   |                              |
| **v.**                                          | )   | **Case No. 2:18-CV-00009-NCC** |
|                                                 | )   |                              |
| **NANCY A. BERRYHILL,**                         | )   |                              |
| **Acting Commissioner of Social Security,**     | )   |                              |
|                                                 | )   |                              |
| **Defendant.**                                  | )   |                              |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Michael R. Dunaway ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (Doc. 14), Defendant filed a brief in support of the Answer (Doc. 19), and Plaintiff filed a reply brief in support of the Complaint (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on February 12, 2015 (Tr. 187–215). Plaintiff was initially denied on April 23, 2015, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 112–119, 122–23). After a hearing, by decision dated February 17, 2017, the ALJ found Plaintiff not disabled (Tr. 16–35). On December 26, 2017, the

Appeals Council denied Plaintiff's request for review (Tr. 5–10).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 26, 2014, the alleged onset date (Tr. 21).  The ALJ further found Plaintiff has the severe impairments of degenerative disc disease, status-post hernia repair, diabetes mellitus, coronary artery disease, status-post myocardial infarction, seizures, obesity, depression, anxiety, and post-traumatic stress disorder ("PTSD"), but the ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21–23).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations (Tr. 23). He can lift/carry ten pounds occasionally and five pounds frequently (*Id.*).  He can stand/walk two hours of an eight-hour workday and sit six hours out of an eight-hour workday (*Id.*).  He cannot climb or balance (*Id.*).  He can occasionally stoop, but cannot kneel, crouch, or crawl (*Id.*).  He can frequently reach and handle (*Id.*).  He must avoid hazards such as dangerous machinery and unprotected heights (*Id.*).  He cannot drive as part of his work duties (*Id.*).  He is capable of simple routine tasks throughout the workday in an occupation that does not require him to communicate with the general public on behalf of his employer (*Id.*).

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including wafer breaker, document preparer, and semiconductor bonder (Tr. 29–30). Thus, the ALJ concluded Plaintiff is not disabled (Tr. 30). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 14).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430–31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

# IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff generally argues the ALJ erred in his credibility analysis of Plaintiff's testimony (Doc. 14 at 8). Second, Plaintiff asserts the ALJ erred in his RFC determination because he did not take into consideration Plaintiff's hyper somnolence (*Id*.).[2] Third, Plaintiff argues the ALJ did not give proper weight to the opinion of the treating psychiatric nurse practitioner (*Id*.). Because the ALJ erred in failing to adequately consider Plaintiff's somnolence in making his RFC determination, the Court will address that issue alone.

## A. Background.

Plaintiff claims two different bases for his disability: mental and physical. Plaintiff alleges an onset date of June 26, 2014, when he was forty-four years old (Tr. 41, 187).

On his application for Social Security benefits, Plaintiff listed the following illnesses, injuries, or conditions: post-traumatic stress disorder ("PTSD"), depression, insomnia, sleep apnea, back pain, panic and anxiety attacks, issues with anger, mood swings, trust issues, epilepsy, degenerative joint disease in his knees and shoulders, and status post brain abscess from infection (Tr. 80–81, 203, 236). In his application for benefits, he explained the insomnia makes it hard for him to keep his scheduled hours of work, he has difficulty sleeping, he has to lay down more than normal, and the sleep aids and other multiple medications he takes for his physical and mental ailments make him groggy or drowsy (Tr. 266–67, 272, 281).

Testifying before the ALJ, Plaintiff explained that his problems initially began in 2001 when doctors discovered he had an infected tooth, which led to an infection in his brain and required Plaintiff to have emergency craniotomy surgery to remove the brain abscess that had developed (Tr. 45). The recovery was extended, lasting for approximately six months, but

---

[2] Somnolence is an inclination to sleep. *Stedman's Medical Dictionary* 1656.

Plaintiff was able to return to work (*Id*.). He testified he has ongoing residual mental and physical problems after that surgery, including headaches, vision problems, depression, anxiety, PTSD, generalized fear (e.g., fear of the brain abscess happening again, fear of dying), reclusiveness, and anger outbursts (Tr. 46). He also testified the anxiety and PTSD increased in the intervening three years from the time he returned to work after the brain surgery to his alleged disability onset date (*Id*.). He was prescribed medication for his psychiatric and anxiety issues (Tr. 49). Plaintiff ultimately started missing about three days a week of work as a result of his anxiety (*Id*.). Moreover, he experienced grand mal and petit mal seizures after his brain surgery, with the petit mal seizures continuing to the date of the hearing (Tr. 49–50). In addition, he has diabetes, which was discovered after a heart attack in February 2016, and he experiences associated neuropathy (Tr. 50–51). He also experiences headaches, impaired or blurred vision, angina, and shortness of breath (Tr. 52–53). Moreover, he stated he has degenerative joint disease and experiences chronic lower back pain (Tr. 56). He also reported experiencing road rage and difficulty focusing (Tr. 58–59).

Plaintiff testified specifically about problems sleeping. He reported he had been diagnosed with sleep apnea and uses a CPAP machine (Tr. 56). Because of his insomnia and sleep apnea, he reported having trouble going to and staying asleep even with the use of sleep medication, Ambien (Tr. 56). He reported waking several times a night, napping during the day, and spending most of his day in bed watching television (Tr. 57–58).

On the alleged onset date of June 26, 2014, Plaintiff's employer terminated him after he was unable to return from an extended six-month medical leave (Tr. 44). He initially sought leave for depression-related issues, but doctors discovered a double hernia while he was on leave, resulting in successful surgery (Tr. 44). Plaintiff testified that June 2014 was "when

everything just kind of bottomed out" (Tr. 60).  He testified he ultimately left work due to depression (Tr. 47).  Plaintiff worked for the same employer, Rent-A-Center, for approximately fifteen years continuously (Tr. 42, 218–21, 237).  There, he managed employees, helped customers, worked on the computer, moved appliances onto delivery trucks, cleaned, and answered the phones (Tr. 43, 238).  At some point, he entered a supervisory role as store manager (Tr. 43, 237–38).  After being fired, Plaintiff did not apply for unemployment benefits (Tr. 44, 187).

## B.  RFC

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."  *Lauer*, 245 F.3d at 703.  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'"  *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863).  *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments.  *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995).  "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC."  *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).  The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence ... must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]"  245 F.3d at 704 (*quoting Dykes*

*v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)).  Thus, an ALJ is "required to consider at least some supporting evidence from a professional."  *Id.  See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

Plaintiff argues the ALJ erred when he did not evaluate the evidence regarding hyper somnolence or naps when determining a proper RFC because if Plaintiff's testimony about daily naps is found to be credible, then even the sedentary jobs identified by the vocational expert would not be available (Doc. 14 at 13).  Under the circumstances of this case, the Court agrees.

The medical records substantiate Plaintiff's subjective complaints of a sleep disturbance. Plaintiff's subjective complaints of insomnia, including prescribed medication, and somnolence are documented throughout his medical records (*See*, *e.g.*, Tr. 328, 337, 343, 353, 360–61, 391, 410–12, 414, 430, 432, 436, 462, 555, 624, 653, 672, 682, 694, 702, 712, 721, 731, 772, 786, 791, 835, 841).  For example, in October 2014, Plaintiff's chief complaint was not sleeping well, and he indicated his Ambien was not working well (Tr. 410).  As another example, in January 2015, Plaintiff reported he slept only a couple hours at a time, around the clock (Tr. 432).  And in June 2016, he reported trouble falling asleep, staying asleep, or sleeping too much and feeling tired or having little energy nearly every day (Tr. 731).

Moreover, Plaintiff's complaints of insomnia and somnolence figured prominently in the ALJ's questioning of Plaintiff during the administrative hearing.  The ALJ specifically questioned Plaintiff at some length about his reports of insomnia and somnolence (Tr. 62–64). When the ALJ asked whether Plaintiff thought he would be able to work a sit-down job with his

medical conditions, Plaintiff answered "No" (Tr. 62).  In response to follow-up questions from

the ALJ about what would keep him from doing such a job, Plaintiff explained, "my depression,

my insomnia, not being able to get enough sleep at night.  I would not be able to keep a regular

schedule" (*Id*.).  Plaintiff further explained he does not sleep consistently at night and "sleep[s]

in shifts basically in the day" (*Id*.).  He next testified his insomnia got worse since the brain

surgery in 2011 and his sleep medication is ineffective (Tr. 63).  The following exchange

between the ALJ then occurred:

> Q [ALJ]  Okay.  So when you say your insomnia would keep you from
> doing a sit-down job, are you telling me that you're incapable of staying awake
> for eight hours?
>
> A [Plaintiff]  I stay awake three, four hours at a time consistently.
>
> Q  But like day to day you're taking naps after three to four hours –
>
> A  Yeah.  I take a lot –
>
> Q  -- everyday?
>
> A  I take a lot of naps.  Yes.

(Tr. 63–64).  After Plaintiff's attorney asked a couple unrelated follow-up questions, the ALJ

returned to asking Plaintiff specific, pointed questions regarding his somnolence/napping during

the day (Tr. 71–72).  In response, Plaintiff explained "I'm sleepy all the time" (Tr. 71).  The

following exchange then took place:

> Q [ALJ]  So is it just like you can't help it but to sleep type of nap [sic]?
> You're not going down to purposely take a nap? It's just your – you just can't stay
> awake anymore?  Is that it?
>
> A [Plaintiff]  Yes.
>
> Q  And does that occur even when you're up and moving around or only
> when you're in bed?

A  I get tired and then I'll get flushed and then I go lay back down.  It seems like since my surgery with my brain and everything, it's just a mess.  It's just gotten worse.

Q  On an average day and if you like really pushed yourself because you had to go do something, how long would you have to lie down before you could get back up after a nap?

A  If I had to push myself?

Q  Yeah.  I'm just trying to visualize your having to take naps and I think did you say three to four hour and then you have to take a nap?  Is that what you said?

A  Probably like five, push myself and then I wanted to, you know, get something done, I'd probably have to go take a nap after about three to four hours probably.

Q  And how long would you have to lie down for before you'd have to get back up?

A  I usually -- if I take a nap, it's like an hour or two, maybe longer . . . So, it's not a set schedule with me anymore. . . . My body just shuts down and then I'm there.  I'm done.

(Tr. 71–72).

Despite the prominence of the insomnia and somnolence in the ALJ's questioning, it is not clear that the ALJ considered or appropriately acknowledged this in making his RFC determination.  As background, the ALJ did not mention either the insomnia or somnolence in the second step of the sequential analysis (Tr. 21).  Therefore, the Court must assume the ALJ found these alleged impairments to be non-severe.  Regardless, even non-severe impairments must be considered in the RFC analysis.  *See* 20 C.F.R. § 416.945(a)(2); *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).  A discussion of the insomnia or somnolence is notably absent from the ALJ's evaluation of Plaintiff's subjective complaints[3] and RFC determination (*See* Tr.

---

[3]  As Defendant notes, Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints.  However, the regulations remain unchanged:  "Our

23–28).  The ALJ makes only one passing reference to "difficultly sleeping" in listing out

multiple limiting mental impairments (Tr. 26).[4]

While the Court believes a close question is presented here, the Court finds it prudent to

remand based on the specific circumstances in this case.  Had the ALJ included a specific

discussion regarding whether Plaintiff's insomnia or somnolence, viewed alone or in

combination with his other physical and mental impairments, presented no additional functional

limitations, the result may have been different.  Based on the circumstances of this case—

particularly the ALJ's pointed questions to Plaintiff and Plaintiff's responses—the Court

concludes the failure to include such a discussion constitutes reversible error.  *See Weeks v.*

*Colvin*, No. 1:14-CV-56 NAB, 2015 WL 5306183, at *3, 4–5, 10 (E.D. Mo. Sept. 10, 2015)

(finding error when ALJ did not discuss sleep disorder/insomnia in decision when Plaintiff

testified he had limited daily activities, rarely left the house, and needed to nap during the day

due to consistent fatigue).  Plaintiff testified he generally could go no more than three to four

hours—and five at most—before needing to take a one- to two-hour nap (Tr. 71–72).  And when

the ALJ asked the vocational expert ("VE") at the administrative hearing about the impact of

being off task approximately twenty percent of the workday or taking an additional unscheduled

break thirty minutes per workday, the VE testified that would eliminate all jobs (Tr. 76).

Therefore, the Court cannot say the ALJ's RFC determination is based on substantial evidence in

light of Plaintiff's testimony.  *Cf. McConnell v. Colvin*, No. 1:15CV00124 AGF, 2016 WL

3165875, at *3 (E.D. Mo. June 7, 2016) (emphasis added) (finding no error in ALJ's RFC

---

regulations on evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

[4] Similarly, the ALJ makes one passing reference to "naps during the day" when analyzing Plaintiff's limitations regarding concentrating, persisting, or maintaining pace in step three of the sequential analysis (Tr. 22).

assessment when, while the plaintiff testified he had insomnia, "he did not testify to any work-related functional limitations that were attributed to insomnia, *such as needing to nap during the day*."); *Smith v. Colvin*, 2014 WL 1018098, at *4 (W.D. Mo. Mar. 14, 2014) (rejecting claim that ALJ failed to consider the plaintiff's insomnia where the plaintiff did not identify any work-related restrictions attributable to insomnia, such as fatigue/excessive daytime sleeping).

It may well be that the ALJ did evaluate Plaintiff's complaints of insomnia and somnolence and found them to be unsupported. For instance, it is possible the ALJ determined the objective medical findings contained in the records did not support the degree of limitation alleged by Plaintiff regarding these alleged limitations. *See, e.g.*, *Buford*, 824 F.3d at 797 (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)) (deferring to ALJ's credibility determination where the objective medical evidence did not support the claimant's testimony regarding the depth and severity of impairments and "the ALJ adequately articulated his reasons for not fully crediting [the plaintiff's] subjective complaints"). Moreover, it may well be that the ALJ concluded Plaintiff did not meet his burden in demonstrating the need for a limitation based on these complaints. *See, e.g.*, *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC.") However, absent a meaningful acknowledgement of these alleged limitations in the ALJ's decision, the Court would be left to speculate as to the ALJ's ultimate determination on these issues. *See Weeks*, 2015 WL 5306183, at *10 (citing *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995)) ("Although the ALJ may have considered and for valid reasons rejected evidence of plaintiff's sleep disorder, [the] decision is nevertheless silent in this regard. As such, this Court would be left to speculate as to whether any rejection of this evidence would be supported by substantial evidence on the record as a whole. This, the Court cannot do."); *Allen*

*v. Astrue*, No. 4:10-CV-00001-NKL, 2010 WL 4643128, at *5 (W.D. Mo. Nov. 9, 2010) (finding RFC improperly determined when ALJ's decision to disregard Plaintiff's allegations of daytime hyper somnolence was not based on substantial evidence). The ALJ's duty to develop the record is not never-ending and does not include the obligation to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). But given the emphasis on somnolence in Plaintiff's testimony and the prominence placed on it during the ALJ's questioning, the Court finds the proper decision is to remand for further discussion. On remand, the reviewing ALJ might discount Plaintiff's statements on this point when evaluating Plaintiff's subjective symptoms or might otherwise find Plaintiff has not met his burden. Such a conclusion on remand would not be inconsistent with this Court's decision.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole. Though the Court does not make an ultimate determination regarding Plaintiff's disability, the Court finds this case should be reversed and remanded. On remand, the ALJ is directed to properly consider Plaintiff's reports of insomnia and hyper somnolence in evaluating Plaintiff's subjective complaints and determining the RFC; further develop the medical record if necessary; and then continue with the next steps of the sequential evaluation process.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 4th day of March, 2019.

                                        /s/ Noelle C. Collins

                                       NOELLE C. COLLINS
                                       UNITED STATES MAGISTRATE JUDGE